**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| KNAPP LOGISTICS & AUTOMATION, INC., | § § § | |
| | § | CIVIL ACTION No. 13-cv-1112 |
| PLAINTIFF, | § | |
| | § | **COMPLAINT FOR** |
| V. | § | **PATENT INFRINGEMENT** |
| | § | |
| R/X AUTOMATION SOLUTIONS, INC., | § | **DEMAND FOR JURY TRIAL** |
| | § | |
| DEFENDANT. | § | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Knapp Logistics & Automation, Inc. ("Plaintiff" or "Knapp") files this

Complaint for patent infringement ("Complaint") against Defendant R/X Automation Solutions,

Inc. ("Defendant" or "RXAS"), and alleges as follows:

## I.      PARTIES

1.      Knapp is a Georgia corporation, having a principal place of business at 2124

Barrett Park Dr. Suite 100, Kennesaw, GA 30144.

2.      Upon information and belief, Defendant is a Colorado corporation and has its

principal place of business at 105 S. Sunset Street, Suite K-L-M, Longmont, CO 80501.

Defendant can be served through its registered agent, Heather Chambers, at 525 Collyer Street,

Longmont, CO 80501.

## II.      JURISDICTION AND VENUE

3.      This is an action for patent infringement of United States Patent No. 8,601,776

("the '776 Patent"), scheduled to be issued on December 10, 2013.  The action arises under the

Patent Laws of the United States, 35 U.S.C. § 1 *et seq*.

4.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331, 1332 & 1338.

5.      In addition, this Court has personal jurisdiction over Defendant because it has knowingly and actively engaged in acts that have infringed, will infringe, and/or aid and abet in the direct infringement of at least claims 1–5, 10 and 14–18, and possibly claims 6–9, 11–13, and 19–20, of Knapp's '776 Patent.

6.      Specifically, this Court has personal jurisdiction over Defendant based upon Defendant's sale of goods and transaction of business in the State of Texas and sufficient minimum contact with the State of Texas, and with the Western District of Texas, in particular. Upon information and belief, Defendant has transacted business within this district, has committed tortious acts within this district, has committed tortious injury to Knapp in this district, regularly does or solicits business in this district, derives revenue from goods used or consumed in this judicial district, engages in other persistent courses of conduct in this district, and is subject to the jurisdiction of this Court.

7.      Venue in this Court is proper under 28 U.S.C. §§ 1391(b)–(c) & 1400(b) because (i) Defendant is subject to personal jurisdiction in the Western District of Texas, and therefore is a resident of that judicial district; and/or (ii) a substantial part of the events giving rise to the claim occurred in the Western District of Texas.

### III.    THE CONTROVERSY

8.      Knapp Logistics & Automation, Inc. ("Knapp") is a member of the Knapp AG family of companies headquartered out of Graz, Austria. Knapp AG is a global leader in distribution logistics and software products that enable its customers to dramatically improve their storage/buffering, order-picking, sorting and packing operations. Knapp AG and its

affiliates have over 55 years of experience and 1,500 material handling installations in 50 different countries.  In the last 10 years, Knapp AG and its affiliates have installed over 500 plants for more than 300 customers in 38 countries on 5 continents.

9.      On October 24, 2013, the United States Patent and Trademark Office ("PTO") notified Knapp that its patent application number 13/398,979 had been allowed.  On November 4, 2013, Knapp paid the issue fee, and on November 20, 2013, the PTO further notified Knapp that said application would issue as United States Patent No. 8,601,776 ("the '776 Patent"), entitled "Systems and Methods of Automated Dispensing, Prescription Filling, and Packaging," on December 10, 2013.  Exhibit A hereto is a true and correct copy of the Issue Notification provided to Knapp.  Exhibit B hereto is a true and correct copy of published application number 13/398,979.  Exhibit C hereto is a true and correct set of the claims as allowed by the patent examiner.[1]

10.     Plaintiff Knapp Logistics & Automation, Inc. is the owner by assignment of all rights, title, and interest in and to the '776 Patent.

11.     Defendant has made, offered for sale, sold, used, and/or caused to be used, and/or imported systems and methods of automated dispensing, prescription filling, and packaging that embody or practice at least claims 1–5, 10 and 14–18, and possibly claims 6–9, 11–13, and 19–20, of Knapp's '776 Patent.  Defendant uses and causes to be used systems and methods of automated dispensing, prescription filling, and packaging, such as those marketed as Defendant's Script Count Tablet & Capsule Dispensing Unit ("Script Count").

12.     An infringing Internet advertisement for the Script Count product is found at http://www.rxas.com/testimonials/mail-order-central-fill-pharmacy/fulfillment-system/tablet-

---

[1] When Knapp receives the issued patent, it will amend this complaint to include a true and correct copy of the '776 patent.

capsule-dispensing-units-and-system/.  A true and correct copy of said advertisement is attached hereto as Exhibit D.  That advertisement shows that the Script Count product includes a counter with one or more sensors configured to count the tablets, and a canister removably engaged with a secure door of the counter, and that the counter is configured to count the tablets when the secure door is open and closed for online replenishment.

13.     Furthermore, Knapp and RXAS are direct competitors in competitive bidding situations.  In previous competitive bids, the requests for proposal have listed all of these foregoing capabilities, and RXAS has submitted bids for those projects.

14.     Therefore, manufacturing the Script Count product, as well as any use, sales, offers to sell, or importation of the same are an unpermitted infringement of Knapp's '776 Patent.  It is also an unpermitted act of indirect infringement to make, import, use, sell or offer to sell components that are uniquely adapted for use with the Script Count, or that Defendant knows will be used in a Script Count product.

15.     Upon information and belief, Defendant has sold over 100 Script Count machines to the HEB Grocery Company, LP ("H-E-B"), in San Antonio Texas, and some or all of those Script Count machines have been installed in H-E-B's facility in or near San Antonio, Texas. This belief is based upon communications between Mr. Michael Hahn of Knapp and Ms. Wendy Faldet and Ms. Sheryll Ann Brown, both of whom are employed by H-E-B in its pharmacy operations.

16.     On November 12, 2013, Knapp's counsel, William L. Warren, sent a letter to Timothy Chambers, President of RXAS, demanding that Defendant immediately cease and desist from any further actions that would constitute unpermitted infringement of the '776 Patent, and warning Defendant not to submit a bid (due November 22, 2013) for the Kaiser Permanente 125-

921-01 Livermore Bldg. A & G CPP Pharmacy ATC Cell Replacement Project in California. Despite Knapp's warning, on or about November 22, 2013, Defendant submitted a bid on the Livermore Project.

17.     On November 22, 2013, Mr. Josef Mentzer of Knapp received a settlement proposal from Defendant.  In the settlement proposal, Defendant offered to not submit a bid on the Livermore Project if all patent rights were waived and if Knapp accepted Defendant's agreement not to sell any product as defined by the claims of Knapp's '776 Patent.  The proposal did not mention the accused Script Count product, or agree not to make, use, sell, offer for sale, or import the Script Count product.

18.     On November 27, 2013, Knapp's counsel sent an email communication to Mr. Wiedmann, Defendant's presumptive outside intellectual property counsel, including a second demand to cease and desist, and requesting a conference call on December 3, 2013 at 11:00 am EST to discuss resolution of this matter without resorting to the court.

19.     On December 3, 2013, at 10:30 am, Mr. Warren sent an email communication to Mr. Wiedmann indicating that he would call as proposed.  When Mr. Warren called Mr. Wiedmann at 11:00 am, however, Mr. Warren was informed that Mr. Weidmann was unavailable.  Mr. Warren left a voicemail message requesting that Mr. Weidmann return Mr. Warren's call.  To date, Mr. Warren has not received a response from Mr. Weidmann.

20.     Upon information and belief, RXAS intends to continue marketing its Script Count product against the ATD-L1P, Knapp's product that practices the claims of the '776 Patent.

## IV.   CLAIMS

### COUNT I
### INFRINGEMENT OF THE '776 PATENT

21.     Knapp realleges and incorporates by reference the allegations of paragraphs 1–20 of this Complaint as if fully set forth herein.

22.     Defendant has infringed the '776 Patent, either literally or under the doctrine of equivalents, and either directly, or by inducing or contributing to the direct infringement of others.

23.     Defendant has continued its infringement despite notice of the existence of the '776 Patent, and despite evidence that its Script Count infringes said patent.  Accordingly, Defendant's infringement is willful.

24.     Defendant's infringement of the '776 Patent has damaged and will continue to damage Plaintiff Knapp.

25.     Defendant's infringement of the '776 Patent has caused and will continue to cause Plaintiff Knapp irreparable harm unless enjoined by the Court.

## V.   JURY DEMAND

26.     Knapp respectfully demands a jury trial on all claims and issues so triable.

## VI.   PRAYER FOR RELIEF

WHEREFORE, Knapp prays for judgment and seeks relief as follows:

(1)     The Court declare that Defendant has infringed the exclusive rights granted to Knapp that are disclosed by the claims of the '776 Patent;

(2)     The Court declare that the '776 Patent is valid and enforceable;

(3)     The Court enjoin Defendant preliminarily and permanently, against further infringement of the '776 Patent by Defendant, its officers, agents, servants, employees, affiliates, subsidiaries, licenses, successors and assigns and those persons acting in concert with them including related individuals and entities, customers, representatives, dealers, and distributors;

(4)     The Court award to Knapp damages in an amount adequate to compensate Knapp for Defendant's infringement of the '776 Patent, but in no event less than a reasonable royalty pursuant to 35 U.S.C § 284;

(5)     The Court award to Knapp its costs, and pre- and post-judgment interest on its damages, pursuant to 35 U.S.C. § 284;

(6)     The Court declare this case to be exceptional and award Knapp its reasonable attorney fees and costs under 35 U.S.C. § 285;

(7)     The Court declare that Defendant's acts of infringement, inducement of infringement and/or contributory infringement of the '776 Patent has been knowing and willful;

(8)     The Court increase all damages awarded to Knapp in this case to three times the damages amount found by the jury or assessed by this Court pursuant to 35 U.S.C. § 284; and

(9)     The Court award to Knapp such other and further relief as the Court may deem just and proper.


Dated:  December 10, 2013                    SUTHERLAND ASBILL & BRENNAN LLP

                                             */s/ Juan C. Garcia*
                                             Juan C. Garcia
                                             Texas State Bar No. 24045914
                                             1001 Fannin Street
                                             Suite 3700
                                             Houston, TX 77002
                                             Phone: 713-470-6157
                                             Fax: 713-654-1301
                                             Email: juan.garcia@sutherland.com

Ann G. Fort*
Georgia State Bar No. 269995
Stephanie G. Stella*
Virginia State Bar No. 77358
999 Peachtree Street NE
Suite 2300
Atlanta, GA 30309
Phone: 404-853-8000
Fax: 404-853-8806
Email: ann.fort@sutherland.com
          stephanie.stella@sutherland.com

*pro hac vice admission to be applied for.
*Attorneys for Plaintiff Knapp Logistics &
Automation, Inc.*

# EXHIBIT A

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | ISSUE DATE | PATENT NO. | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/398,979 | 12/10/2013 | 8601776 | 24036-0010 | 7243 |

29052        7590        11/20/2013
SUTHERLAND ASBILL & BRENNAN LLP
999 PEACHTREE STREET, N.E.
Suite 2300
ATLANTA, GA 30309

# ISSUE NOTIFICATION

The projected patent number and issue date are specified above.

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
### (application filed on or after May 29, 2000)

The Patent Term Adjustment is 0 day(s). Any patent to issue from the above-identified application will include an indication of the adjustment on the front page.

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Application Assistance Unit (AAU) of the Office of Data Management (ODM) at (571)-272-4200.

APPLICANT(s) (Please see PAIR WEB site http://pair.uspto.gov for additional applicants):

Claus Henkel, Cartersville, GA;

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The USA offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to encourage and facilitate business investment. To learn more about why the USA is the best country in the world to develop technology, manufacture products, and grow your business, visit <u>SelectUSA.gov</u>.

IR103 (Rev. 10/09)

EXHIBIT B

US 20120216487A1

(19) **United States**

(12) **Patent Application Publication** (10) Pub. No.: **US 2012/0216487 A1**

Henkel (43) Pub. Date: **Aug. 30, 2012**

(54) **SYSTEMS AND METHODS OF AUTOMATED DISPENSING, PRESCRIPTION FILLING, AND PACKAGING**

(75) Inventor: **Claus Henkel**, Cartersville, GA (US)

(73) Assignee: **Knapp Logistics Automation, Inc.,** Kennesaw, GA (US)

(21) Appl. No.: **13/398,979**

(22) Filed: **Feb. 17, 2012**

**Related U.S. Application Data**

(63) Continuation of application No. 11/134,113, filed on May 20, 2005, now Pat. No. 8,141,330.

(60) Provisional application No. 60/572,955, filed on May 20, 2004.

**Publication Classification**

(51) **Int. Cl.**
  *B65B 65/08* (2006.01)
  *B65B 1/04* (2006.01)

(52) **U.S. Cl.** .................................. **53/167**; 222/52; 141/1

(57) **ABSTRACT**

Systems and methods of automatically dispensing tablets are disclosed. The systems and methods of the invention provide a highly secure, highly accurate and rapid means of dispensing tablets. The system includes an automatic dispensing tablet dispensing system as shown in the Figures and provides a means of lowering errors while preventing unauthorized tampering by non-authorized personnel. Moreover, the invention relates to systems and methods for packaging vials, packaging items from totes, and packaging items from totes with vials.



Case 1:14-cv-00319-RBJ Document 3 Filed 02/04/14 USDC Colorado Page 13 of 58



Figure 1



Figure 2



Figure 3



Figure 4



Figure 5



Figure 6



110

Figure 7



Figure 8

Case 1:14-cv-00319-RBJ   Document 3   Filed 02/04/14   USDC Colorado   Page 18 of 58



Figure 9



Figure 10

Case 1:14-cv-00319-RBJ   Document 3   Filed 02/04/14   USDC Colorado   Page 19 of 58



118

## Figure 11



120

## Figure 12



Figure 13



Figure 14



130

128

Figure 15

Case 1:14-cv-00319-RBJ   Document 3   Filed 02/04/14   USDC Colorado   Page 22 of 58



Figure 16



Figure 17



Figure 18



136

Figure 19



138

Figure 20



## Figure 21



Legend:
① Empty Vials
② Empty Vials Waiting to be Filled
③ Full Vials
④ Partially Filled Vials
← Direction of Conveyor Motion

## Figure 22



FIG.23A

Case 1:14-cv-00319-RBJ   Document 3   Filed 02/04/14   USDC Colorado   Page 27 of 58



FIG.23B



FIG.23C



FIG.23D



FIG.23E



FIG.23F



FIG. 24



FIG. 25



FIG. 26



FIG.27A



FIG.27B



FIG.27C



FIG.27D



FIG.27E



FIG.27F

## SYSTEMS AND METHODS OF AUTOMATED DISPENSING, PRESCRIPTION FILLING, AND PACKAGING

[0001] This invention claims priority under 35 USC §119 to U.S. Provisional Application No. 60/572,955 filed on May 20, 2004, the contents of which are hereby incorporated by reference in its entirety.

### FIELD OF THE INVENTION

[0002] This invention relates to systems and methods of automated tablet dispensing that provide high security and controlled replenishment. The invention also relates to prescription filling systems including a plurality of automated tablet dispensers and packaging capabilities.

### BACKGROUND OF THE INVENTION

[0003] Existing tablet counting and dispensing systems generally employ serial processes in which bulk drug is emptied into a device that counts the tablets directly into empty bottles or vials. Such devices generally include numerous, up to several hundred, containers for holding numerous types of drugs. Once the counter has emptied out all of the tablets of a container for a particular drug, a technician refills the container from bulk storage containers before the device begins counting again. As bulk drug is emptied into the counting device, spillage often occurs. Many existing tablet counting and dispensing systems, such as Baker cells, typically include rotating bowls that tend to grind on tablets causing excess dust. After some time, the resulting dust is sufficient to cause errors in counting to occur. Additionally, the system may need to be cleaned as many as four or more times per day in order to maintain the system and improve accuracy. Generally, if the system is not cleaned, one also has problems with cross-contamination. Furthermore, existing systems fail to provide a level of security that is as high as desired by most in the industry given the sensitive nature of pharmaceuticals and the possibility of tampering with tablets or capsules that end up on the shelf of the local drug store and/or into the hands of patients and/or households. Accordingly, there is a need for methods and systems of automated tablet dispensing that provide high security, controlled and reduced replenishment, efficiency, and ease of use.

### BRIEF DESCRIPTION OF THE DRAWINGS

[0004] FIG. 1 shows a side view of an embodiment of a system for automated tablet dispensing according to the present invention.
[0005] FIG. 2 shows a perspective view of the automated tablet dispensing system of FIG. 1.
[0006] FIG. 3 shows a perspective view of a canister of the automated tablet dispensing system of FIG. 1.
[0007] FIG. 4 shows a perspective view of a bottom plate of the canister of FIG. 3.
[0008] FIG. 5 shows a perspective view of a door of the canister of FIG. 3.
[0009] FIG. 6 shows a perspective view of a top of the canister of FIG. 3.
[0010] FIG. 7 shows a perspective view of a main enclosure of a counter of the automated tablet dispensing system of FIG. 1.

[0011] FIG. 8 shows a perspective view of a top plate of a counter of the automated tablet dispensing system of FIG. 1.
[0012] FIG. 9 shows a perspective view of a hopper assembly including the dispenser reserve, singulation channels, and vibrating feeder of the automated tablet dispensing system shown in FIG. 1.
[0013] FIG. 10 shows a perspective view of a dispenser reserve of the hopper assembly of FIG. 9.
[0014] FIG. 11 shows a perspective view of a hopper support of the hopper assembly of FIG. 9.
[0015] FIG. 12 shows a perspective view of a singulation channel support of the hopper assembly of FIG. 9.
[0016] FIG. 13 shows a perspective view of a singulation channel of the hopper assembly of FIG. 9.
[0017] FIG. 14 shows a perspective view of a vibrator of the hopper assembly of FIG. 9.
[0018] FIG. 15 shows a perspective front view of a buffer of the automated tablet dispensing system of FIG. 1.
[0019] FIG. 16 shows a perspective rear view of a buffer of the buffer of FIG. 15.
[0020] FIG. 17 shows a perspective view of a control box of the automated tablet dispensing system of FIG. 1.
[0021] FIG. 18 shows a perspective view of a nozzle assembly of the automated tablet dispensing system of FIG. 1.
[0022] FIG. 19 shows a perspective view of a fixed nozzle of the nozzle assembly of FIG. 18.
[0023] FIG. 20 shows a perspective view of a removable nozzle of the nozzle assembly of FIG. 18.
[0024] FIG. 21 shows a perspective view of a nozzle baffle of the nozzle assembly of FIG. 18.
[0025] FIG. 22 shows a schematic plan view of an exemplary embodiment of a prescription filling system according to this invention.
[0026] FIGS. 23A-23C show an exemplary embodiment of a prescription filling and patient order packaging system according to this invention.
[0027] FIG. 24 shows several views of an embodiment of a sub-frame assembly for placement of multiple automated tablet dispensing systems according to this invention.
[0028] FIG. 25 shows several views of an embodiment of an automated tablet dispensing system according to this invention.
[0029] FIG. 26 shows a block diagram of an embodiment of an automated packing system for prescriptions and other goods/items according to this invention.
[0030] FIGS. 27A-27C show another exemplary embodiment of a prescription filling and patient order packaging system according to this invention.

### DETAILED DESCRIPTION OF THE INVENTION

[0031] The present invention provides an automated tablet counting and dispensing system that provides patient safety, high operating reliability, and ease of use for authorized personnel. An exemplary embodiment of an automated tablet dispensing system 100 includes a canister 102, a nozzle assembly 134, and a counter 109 that includes a hopper assembly 114 with a dispenser reserve 116, vibrating feeder 124, and one or more singulation channels 122; a scanner or sensor 126; a buffer assembly 128; and a control board enclosure 132, as shown in FIG. 1. Several views of an embodiment of an automated tablet dispensing system according to this invention are also shown in FIG. 25. Canister 102 is removed from counter 109 and filled with bulk drug product in a secure room, which is a location with restricted access. Once canis-

2

ter **102** is filled, it is returned to the room in which its matching counter is located. Canister **102** is docked with counter **109**, and the drug product empties completely into counter **109** from canister **102**. Once the drug product is emptied into counter **109**, canister **102** may be removed and refilled in the secure room while counter **109** performs the operations of counting the drug product and emptying the product into vials, bottles, or similar containers. The canister can be designed in a way that allows for replenishment of the canister during the counting of the tablets process. In other words, the system does not need to be turned off when a canister is being replenished during counting. In an exemplary embodiment, the canister is designed so that no one has physical access during the replenishment of the canister. The counter door is generally closed and locked so that there is no access to the counter or to the canister by unauthorized personnel. Moreover, in one embodiment, when the canister is in place on the counter, there is a locking mechanism that prevents either of the counter or canister from being accessed by unauthorized personnel.

[0032] It should be apparent to those of ordinary skill in the art that one of the purposes of the canister is to transport product from bulk containers to the ATD system (automated tablet dispensing system). In one embodiment, an access door, and preferably a sliding access door may be present at the bottom of the canister. The door can be pulled out to enable access to the canister chamber where the product will be stored. After closing the door, a tamper proof security tag can be placed through openings on either side of the canister so as to preclude access by unauthorized personnel. Those of skill in the art will recognize that a security tag can be added in other areas of the canister so as to prevent access by unauthorized personnel. In one embodiment, the canister can be provided with a triangular label with a 2D barcode and a four digit number or alternatively, an RF chip electronic verification system. The barcode and number can be used to verify the correct location of the canister before, during, or after dispensing tablets. Moreover, the canister may have an electronic number stored in a chip at the back. The electronic number can be read through two spring loaded pins that make contact at the back of the canister, when the canister is in use.

[0033] The use of multiple automated tablet dispensing systems **100** operating in parallel in a prescription filling system provides increased efficiency, in contrast to the serial processing utilized in existing prescription filling lines. An exemplary embodiment of a prescription filling system according to this invention is described in additional detail below beginning with reference to FIG. **22**.

[0034] As shown in FIGS. **1** and **2**, an exemplary embodiment of a tablet dispensing system **100** according to this invention includes canister **102**, counter **109** that includes hopper assembly **114** with diameter reserve **116**, vibrating feeder **124**, and singulation channel **122**; sensor **126**; buffer assembly **128**; and control board **132**; and nozzle assembly **134** extending from counter **109**. In one embodiment, each canister is dedicated to a counter with a unique serial number such that a canister can only be used to refill its assigned counter. Because of these dedicated canisters and counters, the possibility of cross-contamination of multiple counters is eliminated. In one embodiment, a tablet dispensing system may fill one or more different sizes of vials with tablets and according to prescription orders, while maintaining controlled replenishment and ensuring patient safety.

[0035] A shelf docking station, such as the exemplary sub-frame assembly shown in FIG. **24**, utilizes a plastic plate, to securely position the counter, which enables connections to electrical power and computer equipment. A base plate of the counter securely attaches the counter to the shelf docking station. In an exemplary embodiment of a prescription filling system, shelf structure may be equipped with numerous docking stations, 50, 100, 460, or any other number (for example the sub-frame assembly shown in FIG. **24** includes 20 spaces for docking counters and multiple sub-frame assemblies may be used), to hold numerous automated tablet dispensing systems (this is further described below beginning with reference to FIG. **22**). A permanent barcode serial number tag (not shown), which is a unique barcode, is displayed on each shelf docking station. A permanent visual number tag (not shown), which is a visually readable number on each shelf docking station, is also displayed. A security identification chip, embedded within each station, provides a unique electronic signature to the central computer system. The ID chip cannot be altered or reprogrammed enabling a very secure barcode validation by the central computer. A refill docking station (not shown), located in a secure room and used for refilling canisters, includes a hopper for bulk product, a canister hold station, a barcode scanner, and a computer terminal. A refill docking station may receive different canisters for emptying drug product from bulk containers into the canister in a tightly controlled manner. Because canisters are filled separately from counters, there is reduced spillage of drug product in and around the counters. Usually the filling of canisters takes place in a secure room where there is no access to the canisters by unauthorized personnel.

[0036] Canister **102** is shown in FIGS. **1** and **2**, and in isolation in FIG. **3**. FIGS. **4**, **5**, and **6** show a bottom plate **104**, a door **106**, and a top **108**, respectively, of canister **102**. The canister and the automatic dispensing system can be any of a variety of sizes so that the instant invention is able to dispense many or a few tablets into vials/trays. Canister **102** is a housing container for tablets, or other forms of drug product. Canister **102** includes a door **106** with a manually-applied tamper evident security strap (not shown) with a unique barcode. If door **106** is opened before scanning, the seal is broken and tampering is evident to personnel. A permanent barcode serial number tag (not shown), which is a unique barcode found on each canister, is displayed on the top of the canister. A permanent visual number tag (not shown), which is a visually readable number on each canister, is also displayed on the top of the canister. A security identification chip, embedded within the canister, provides a unique electronic signature to the central computer system. The ID chip cannot be altered or reprogrammed enabling a very secure barcode validation by the central computer.

[0037] The design of the canister ensures that all the tablets transfer into the counter successfully. Canister door **106** forms the entire bottom of the chamber containing the drug product. With no edges or lips to trap even the smallest tablets, complete transfer is achieved via gravity alone without the use of vibratory or other mechanical methods.

[0038] A main enclosure **110** of counter **109** is shown in FIG. **7**, and a top plate **112** of counter **109** is shown in FIG. **8**. Counter **109** includes all of the components inside main enclosure **110**, as best seen in FIGS. **1** and **2**, including hopper assembly **114**, sensor **126**, control board **132**, and buffer assembly **128**. In a preferred embodiment, the counter has a computer board that allows the counter to have adjustable

speeds in counting tablets and can also perform diagnostic tests on the counter(s). The automatic dispensing system may contain a plethora of counters that allow the simultaneous counting of tablets. Although not shown in the drawings, the counter includes a unique and permanent barcode serial number tag and permanent visual number tag on its front plate. The counter or counters also optionally contain a RF chip or another means of identifying the counter(s) for security purposes to insure that the counter(s) is/are at the correct system location. This identification device ensures that the vials/trays get filled with the proper tablets and also optionally makes the counter(s) tamper proof so that the tablets are not being accessed by unauthorized personnel. The security identification chip, embedded within the counter, provides a unique electronic signature to the central computer system. The ID chip cannot be altered or reprogrammed enabling a very secure barcode validation by the central computer. Counter 109 includes an integrated top door with an automated locking mechanism. Top docking plate 112 of counter 109 receives the corresponding canister. The counter top door (not shown) remains closed and locked until a proper canister is attached to top docking plate 112 of counter 109 and verification scanning is successfully completed by scanning the barcodes on canister 102 and counter 109, as well as the security tag and electronic validation of the barcodes via the embedded ID chips. The counter door is unlocked automatically if the scanned codes match information stored in a central database. The counter door is required to be opened first, then canister door 106 is opened. Once the counter and canister doors are opened, drug product empties from the canister into the counter. In one embodiment, the counter has a capacity of about 2000-2500 cubic centimeters.

[0039]   A large side door (not shown) is included on counter 109 for cleaning purposes, and preferably may only be opened with a special tool. The counter can be taken out of its shelf docking location for cleaning. Once removed, the counter is taken to a separate room and placed into a cleaning docking station for cleaning. The large side door of the counter is removed, and the counter is cleaned according to instructions. The door is replaced and the counter is returned to its independent shelf location and placed into its assigned shelf docking station, where the central computer validates and activates the counter.

[0040]   In one embodiment, the enclosure 110, as seen in FIG. 7, can serve the function of making the ATD a closed unit so that no particles or dust enter or depart the ATD. Moreover, if the enclosure is a closed unit, the risk of cross contamination and unauthorized personnel from accessing the product is prevented. In one embodiment, the inside of the enclosure can be accessed through a side cover that is attached with security screws, wherein the security screws are there to prevent tampering.

[0041]   Hopper assembly 114, shown in FIG. 9, is included in counter 109 for product storage and feeding of tablets through the scanning system. The hopper assembly includes dispenser reserve 116, singulation channels 122, and vibrating feeder 124 as shown in FIG. 1. Some portions of hopper assembly 114 are shown in isolation in FIGS. 10-14. FIG. 10 shows dispenser reserve or hopper shell 116, FIG. 11 shows a hopper support 118, FIG. 12 shows a singulation channel support 120, FIG. 13 shows singulation channel 122, and FIG. 14 shows vibrator 124. As drug product empties from canister 102 into counter 109, the tablets are fed into dispenser reserve 116 of hopper assembly 114. Vibrator 124

assists in moving the product from reserve 116, down singulation channel 122 toward sensor 126.

[0042]   In one embodiment, the hopper may contain approximately 2000 cc of product, although other amounts are contemplated and possible, such as amounts like 100 cc to 2500 cc product. A vibratory drive may move the product from the hopper to the sensor while spreading and isolating each tablet as it slides along the singulation channel. In one embodiment the hopper and vibratory drive are balanced so that tablets flow at a constant rate. It is contemplated that the hopper and vibratory drive can be balanced by computer control so that fine tuning occurs automatically.

[0043]   Sensor 126, with its location shown only in FIGS. 1 and 2, is present inside counter 109 to count tablets. In a preferred embodiment, the technology used for the sensor is not dependent on the type of tablet being counted, can identify an incorrect or broken tablet, and is immune to dust created by movement of the tablets from the canister through the hopper. Moreover, there is a sufficiently wide channel so that dust does not affect counting. Sensor 126 is preferably an electrostatic field scanner, such as that described in U.S. Pat. No. 6,504,387, issued to Shail et al., entitled "Item Detection/Inspection Arrangement", which is hereby incorporated by reference in its entirety or that manufactured by Sparc Systems Ltd. of Malvern, Worcestershire, United Kingdom. An infrared spectroscopy sensing device, such as that manufactured by Foss NIR Systems, Inc. of Silver Spring, Md., U.S.A., may also be used. If dust immunity is not an issue, a light barrier type sensor, such as that manufactured by Banner Engineering Corp. of Minneapolis, Minn., U.S.A., may be employed. Another sensor that is contemplated is a SICK detector. Those skilled in the art understand that, whatever the sensing technology utilized, adaptations are typically required for successful implementation into a particular automated tablet dispensing system.

[0044]   Buffer assembly 128 of counter 109 is shown in FIGS. 1, 2, 15, and 16. Buffer assembly 128 includes an automated flipper door 130 to hold pre-counted tablets before filling into vials, bottles, trays (with plastic trays being preferred) or similar containers through the nozzle assembly. Nozzle assembly 134 is shown in FIG. 18. A fixed portion 136 of nozzle assembly 134 is shown in FIG. 19, while a removable portion 138 of nozzle assembly 134 is shown in FIG. 20. The removability of portion 138 shown in FIG. 20 provides the ability to thoroughly clean the system. A nozzle baffle 140 of assembly 134 is used to prevent bridging and is shown in FIG. 21. Electronic counter control board enclosure or box 132, shown in FIG. 17, is also included.

[0045]   The nozzle is designed so that tablets do not get jammed or blocked. In one embodiment, this is accomplished by inserting an internal deflector so that tablets pass through the nozzle easily. In one embodiment, the deflector can be disassembled for easy cleaning of the deflector and the nozzle. Moreover, in one embodiment, the nozzle is designed to ensure smooth product transfer. This is generally accomplished by making the nozzle design adjustable in different directions so that the nozzle can accommodate different size tablets and different size vial/tray openings. The adjustable nozzle provides the advantage of reducing spillage of the product.

[0046]   One advantage to the instant invention is that a computer based system allows the automatic calibration of the system to accommodate any of a variety of tablet sizes, even tablets that have not previously been counted. To Applicants

knowledge, the instant invention is the first system to have this ability as all previously known systems require time-consuming calibration (usually performed manually) and expensive new components to accommodate different tablet sizes.

[0047]   In one embodiment, the buffer is designed so as to hold one order at a time. However, it should be understood that alternative designs are contemplated that can contain more than one order at any time. For example, one embodiment of the buffer encompasses a two-buffer chamber that allows a vial or bottle to be present and discharged to the vial or bottle. The buffer allows the holding of tablets prior to the arrival of a puck containing a vial. As soon as the vial arrives the buffer can dispense tablets and pre-count tablets for the next or any subsequent order. In one embodiment, the side of the buffer is a stainless steel plate that holds a pneumatic cylinder to actuate the system. In an exemplary embodiment, the side plate can be easily removed for cleaning the inside of the buffer.

[0048]   The design of buffer assembly **128** allows pre-counting of tablets before a vial is filled thus increasing throughput. One embodiment of a buffer assembly has two compartments with a flipper door. However, it should be understood that multiple compartments are possible and contemplated. In a preferred embodiment, the capacity per compartment is about 180 cubic centimeters, although it is contemplated that other sizes can be accommodated. After a prescription order is entered into the computer system, the appropriate counter may begin counting product into its buffer. In most cases, the transition time of the empty vial between its holding position and the counter is sufficient to allow completion of the counting process. Thus, when the vial arrives at the assigned counter, the product can be dispensed rapidly into the vial, and the vial can be conveyed forward to final inspection and shipping. Furthermore, the buffer enables intelligent exception handling. In the case where an individual counter exhausts its dispenser reserve prior to completing an order, the partially filled vial can be rerouted to another counter, containing the same drug product, which will dispense only the amount of drug product necessary to complete the order.

[0049]   In an embodiment, the electronics for the system, including a control board, one or more pneumatic valves, and a power supply may be located inside an enclosure that protects them from dust or product. A vent at the back of this electronics enclosure allows the flow of air, so that the electronics can operate safely and reliably.

[0050]   In utilizing certain embodiments of automated tablet dispensing systems of this invention, two types of human operators may be associated with refilling canisters and refilling counters by changing empty canisters. A pharmacist is in charge of refilling canisters, while a replenishment technician is in charge of refilling counters by changing empty canisters. Alternatively, a robot can be used instead of a replenishment technician. All persons with access to the canisters have a unique barcode personal identification. These unique barcode IDs are used by the central computer to authorize an operator to perform tasks and to record who is in possession of the canister and drug product at all times. The canisters are handed from person to person and a wireless RF (radio frequency) gun, which is a barcode scanner used to input information from barcodes into a central database, is used to record the transfer of the contents in a central database for tracking and security purposes. The barcode scanning and

other security measures described in this paragraph and other paragraphs herein provide a high level of security and full tracking of canisters and drug product.

[0051]   A pharmacist is located in a secure room. The pharmacist receives empty canisters and fills them with the appropriate drug from bulk. A bulk bottle or container is where tablets of a particular drug are commonly stored before refilling the canisters. Each time a canister is refilled, a unique refill identification number is created and stored in a database to track the product. The unique refill ID number is preferably the barcode located on a tamper evident seal, which is a disposable plastic strap that is destroyed when the canister is opened, and is linked to the barcode on the canister and the embedded canister ID chip number. The central computer can assign the canister to the appropriate counter and link the refill ID number to the counter barcode and embedded counter ID chip number, and the docking station barcode and embedded docking station ID chip number.

[0052]   The pharmacist scans the canister barcode, his or her unique personal ID number, and the NDC (National Drug Code) barcode of the bulk bottle. The scanned information is stored in a central database with the required information for tracking and monitoring the canister and drug product flow. A replenishment technician in charge of the automated tablet dispensing system or a robot receives the filled canisters from the secure room and upon scanning of the unique refill ID number and his or her unique personal ID number, the change of possession of the canister is recorded in the central database.

[0053]   Alternatively, the canister can arrive pre-filled from another location. The canisters of the present invention are designed so as to be able to ship the canisters to another location wherein the canisters can be filled with tablets in a manner similar to that performed by the pharmacist in the secure room as described above. In a preferred embodiment within this embodiment, the pre-filled canisters should have the same security precautions as those canisters that are filled by the pharmacist in the secure room (e.g. a security tag, RFIDs, etc.).

[0054]   The replenishment technician or alternatively, the robot places each filled canister on top of the appropriate counter and visually verifies that the serial numbers correspond. The replenishment technician scans all barcodes to verify that the information in the central database corresponds to the units on hand. The central computer then validates that the scanned barcodes and the embedded ID chips all correlate to the refill ID number. The system then unlocks the counter door, allowing the replenishment technician to load the counter with the correct product.

[0055]   An exemplary embodiment of a process for filling empty canisters in a secure room is described as follows. A pharmacist scans his or her personal ID barcode, triggering a check to ensure that the pharmacist is authorized to perform this task and time stamp the operation. The empty canister barcode is then scanned and placed into a refill docking station. The central computer then validates the canister barcode via the embedded canister ID chip. The central computer generates a work order for refilling the canister. Once the work order is received, the bulk container with tablets is retrieved, and the product identification information, lot number, expiration date, and quantity are scanned in (or may be manually entered) using a wireless RF gun or similar means. Each time information is scanned, it is stored in the central database. The canister door is opened, and the canister is filled

5

with tablets. The door of the canister is then closed, and the security seal with barcode is attached to the canister. The canister, security seal and personal ID barcodes are scanned, and a finish time stamp is recorded in the central database. The sealed canister is removed from the refill docking station, and the refill process is complete.

[0056]   An exemplary embodiment of a process for placing a filled canister onto the appropriate counter is described as follows. A replenishment technician scans the replenishment technician's ID barcode, triggering an authorization process and time stamp. The canister is received from the secure room. An intact security seal and visually readable canister number tag are verified via barcode scanning. The canister is brought to and docked with the appropriate counter. The canister, counter, and docking station barcodes are verified by scanning and validated via the embedded ID chips. Once all of these are verified as correct by comparison to information in the central database, a message is transmitted to the replenishment technician that the security seal on the canister may be destroyed.

[0057]   The system automatically opens the security locking mechanism of the counter door. The doors of the counter and the canister are then manually or alternatively, automatically opened, allowing transfer of drug product into the counter. After completion of transfer of the product into the counter, a message is generated instructing closure of the counter door. Once the door is closed, the security mechanism automatically locks the door. The canister door is then closed, and the canister may be removed from the counter and taken to the refill station once again.

[0058]   In certain exemplary embodiments of some of the processes described herein, all processes are time stamped and have to be performed within certain user definable time windows. If an operation is not completed in a timely manner, a time out occurs, triggering automatic dispatch of an authorized supervisor to the location to verify the reason of the event. The process may be re-started or continued only if the supervisor gives authorization to continue.

[0059]   An exemplary embodiment of a prescription filling system according to this invention includes a vial conveyor matrix with a plurality of automated tablet dispensing systems, a portion of which is shown in FIG. 22. Empty vials are moved along a conveyor from their storage area to the appropriate automated tablet dispensing system (ATD). Multiple vials representing multiple orders are provided with a queuing location adjacent to their appropriate ATD as shown. After filling, each vial moves along a conveyor to a final processing area. Full vials proceed to an area where they may be reviewed by a human operator, capped, and packaged with vials for the same patient. Pre-packaged goods/items may also be included in the final package that is labeled and shipped to the patient. Rather than being reviewed by a human operator, capped, and packaged for shipment, partially filled vials return via conveyor to the matrix of ATDs to be completely filled according to the patient's order. This may occur, for example, if a prescription order is for 30 tablets of a particular drug and the ATD only has twenty remaining tablets. The partially filled vial may be sent to another ATD that contains the same drug to receive the final 10 tablets needed. Although the matrix shown in FIG. 22 shows only six ATDs, it should be understood that a prescription filling matrix may include a large plurality of ATDs, tens, hundreds, or more, such that more than one ATD may have the same type of drug. The use of numerous ATDs allows for parallel processing of

prescription orders, in contrast to the serial processing that is presently common in the industry. FIGS. 23A-23C show an exemplary embodiment of a prescription filling and patient order packaging system according to this invention in detail. FIGS. 27A-27C show an exemplary embodiment of a prescription filling and patient order packaging system according to this invention in detail.

[0060]   Moreover, the conveyor system can be designed to accommodate a plurality of vials that can wait at a given counting station. In one embodiment, 4 or 5 vials can wait at a counter.

[0061]   In one embodiment of a prescription filling system, there are a plurality of vial descramblers and a plurality of vial labelers. Empty vials are fed from a descrambler bin into a chute through which the empty vials proceed until a label is applied to the vial by a vial labeler. Labels are applied based on patient-specific prescription orders received and stored in a central computer database. In another embodiment, labels may be applied to vials manually, and the empty, pre-labeled vials placed into the descramblers. In such an embodiment, labeled vials would pass from the descrambler and into a holder or puck as further described below. In another embodiment, labels may be applied manually to vials as the vials are moving from the descrambler through a chute or lane to be placed into a puck or holder. In another embodiment, vials may be pre-labeled off-site or at another location on-site using automated vial labelers, and the pre-labeled, empty vials may be put into the descramblers from which the vials pass to an area where they are placed into and associated with a puck or holder.

[0062]   After a label is applied to a vial, the vial is placed into a holder or puck that contains an RFID chip for identification purposes. The holders or pucks may be generally cylindrical objects with open tops into which a vial can be placed. Preferably, the holders are shaped such that they are wider and heavier at their base and so that at least a portion of a vial placed within a holder extends out from the top of the holder. A wider and heavier base helps prevent tipping over of the vials as the vials move along the vial conveyor matrix within their holders. In a preferred embodiment, the vial opening is at least about 30 mm in diameter. In one embodiment of a prescription filling system, a single size of vials may be used. In another embodiment, the volume of the vial is determined by the size of the order.

[0063]   In one embodiment the pucks are diverted by an arrangement of pushers on the conveyor matrix according to the target information for the ATD banks. When parallel processing occurs, a plurality of pucks may pass through to other ATD banks containing a plurality of vials.

[0064]   The vials may be placed into the holders using manual labor or by an automated system. There may be one or more stations where empty vials are placed into holders. As a vial is placed into a holder, the barcode on the vial label is scanned, and the RFID chip in the holder is read. Both of these identifiers are stored in the central computer and linked together, indicating that a vial for a particular patient order to be filled is traveling through the system in a particular holder. The linking of a labeled vial with a holder allows the central computer to direct where in the vial conveyor matrix the vial proceeds in order to be properly filled. In other words, for example, if a vial is labeled according to a prescription order of 30 tablets of antidepressant for John Doe, the central computer can direct the associated holder, via the RFID chip, to the automated tablet dispensing system within the vial con-

veyor matrix that contains the ordered antidepressant. More-over, at or before the time when the tablets are being dumped into the vials/trays, an RFID chip on a puck/holder that is associated with the vial tray is read, which allows dumping only if the correct puck/holder is in position. Further, the present system may have a computer controlled recounting buffer that allows for a continuous counting process.

[0065]   The control PC, which handles the order queue for the ATD units, may expect pucks to arrive at the correct ATD in the same order as customer orders are received from the PLC/WCS (programmable logic controller/Warehouse control system). When the orders are processed in the order that customer orders are received, one of the following processes occur: 1) the expected puck arrives and the order is processed in the normal manner, 2) the puck does not arrive at the destination lane, which may cause a second order to be sent, 3) an unexpected puck in the correct order queue arrives at the destination lane, which causes that puck to be properly filled, or alternatively, the order will not be filled, 4) the puck arrives that is not in the correct order queue, which causes no product to be dispensed. The system can also be designed so that pucks containing vials/trays can be recycled around conveyor lanes so that they arrive at a destination in a desired order. For example, puck A containing vial A may be filled prior to vial B associated with puck B but puck A can be routed so that it arrives at a given destination after vial B associated with puck B. Exemplary embodiments of automated tablet dispensing systems according to this invention were described in detail above.

[0066]   The PLC from the PC may optionally stop each puck at a given definition point, wherein a digital camera may be present that takes a photo of the contents of any vial (if product has been dispensed), and the RFID associated with the vial may be used to read the puck-transponder number. The image may be optionally saved at the WCS database and named with the puck transponder number. The saved image may be evaluated by one or more pharmacists or authorized personnel to evaluate the integrity of the vial. The one or more pharmacists may compare the photo of the vial with a standard control or known vial with the correct product to ascertain the integrity of the vial. In one embodiment, if the one or more pharmacists verify the integrity of the vial, the pharmacist(s) press a "yes" button or keystroke which allows the vial then proceeds to the capper. Alternatively, if the pharmacist verifies that the vial does not contain the correct order or some other problem arises, the pharmacist(s) press a "no" button or keystroke, which optionally sends the puck to an error correction station, wherein the error can be corrected and/or reprocessed.

[0067]   In one embodiment, only those pucks with the associated vials that have received a "yes" from the pharmacist proceed to capping. Thus, pucks that are sent to target check stations by the WCS, pucks that have errors, and pucks that have not been read are sent to the checking station or to the appropriate error correction station(s). In one embodiment, at the appropriate error correction station(s), one or more pharmacists may correctly place product in the vial. Alternatively, the one or more pharmacists may correct the error and place the puck in the system to be repacked by the system. In a preferred embodiment, the puck with the filled vial will again be photographed and checked for its integrity by one or more pharmacists.

[0068]   As each labeled vial is placed into and associated with a holder, the vial travels to the appropriate location

within the vial conveyor matrix for filling according to prescription order. An exemplary vial conveyor matrix includes a plurality of rows of automated tablet dispensing systems extending between entrance and exit lines running along the outside of each end of these rows. Conveyor lines extend from the outside entrance and exit lines along each side of each row of automated tablet dispending systems. These conveyor lines are connected by shorter conveyor lines that extend underneath each automated tablet dispensing system.

[0069]   In an exemplary embodiment, a vial conveyor matrix includes a plurality of rows (e.g., 5, 10, 12, 15, 20, 25, or any other number) with each row having a plurality of automated tablet dispensing systems (e.g., 5, 10, 12, 15, 20, 25, or any other number), such that the vial conveyor matrix includes two outside entrance lines, two outside exit lines, numerous lines extending between the outside lines, and numerous lines extending underneath the automated tablet dispensing systems. The number of rows and automated tablet dispensing systems on each row may be determined by the desired throughput of the prescription filling system, the different number of drug types that are to be dispensed by the system, or other parameters. Multiple automated tablet dispensing systems may dispense the same type of drug. For example, it may be desirable to have several automated tablet dispensing systems dedicated to dispensing frequently ordered drugs. Each row is not required to have the same number of automated tablet dispensing systems. An exemplary embodiment, a prescription filling system may include 15 rows including a cumulative total of 460 automated tablet dispensing systems. It should be understood that any number of automated tablet dispensing systems may be used in a variety of configurations (not limited to rows) in accordance with the principles of this invention.

[0070]   As an example of a process for filling a vial, as a labeled vial in its holder proceeds toward the appropriate automated tablet dispensing system, the vial travels along one of the outside entrance lanes. When the vial reaches the row where the appropriate automated tablet dispensing system is located, the vial exits onto the entrance conveyor line for that row of dispensing systems. The vial travels that conveyor line, until it reaches the appropriate automated tablet dispensing system, where the vial then proceeds onto the shorter line that travels underneath the dispensing system. The vial continues to move forward along the line, waiting on vials ahead of it in line for that dispensing system to be filled, until the vial is underneath the nozzle of the dispensing system. Once the empty vial is under the nozzle, the automated dispensing system empties pre-counted tablets into the vial according to the patient-specific prescription order. The location of the holder is known by the central computer at all times using the RFID chip. The central computer communicates with the control board of each automated tablet dispensing system such that the automated tablet dispensing system can pre-count tablets for vials before the vial reaches the point where it is to be filled. This allows for increased filling of prescription orders because the automated tablet dispensing system does not have to wait until an empty vial is beneath the nozzle to both count and then empty tablets into the vial. Moreover, it is noted that a plurality of vials can be filled simultaneously. In an exemplary embodiment, any number of vials can be filled simultaneously.

[0071]   After filling, a filled vial exits the conveyor line that passes underneath the automated tablet dispenser and proceeds along a conveyor line toward the outside exit lines. The

filled vial enters an outside exit line and may proceed to a verification station before capping. The vial and holder may pass through a station where the vial label barcode and holder RFID chip are read to verify that the vial and holder still match (i.e., there has not been any tampering, the vial has not switched with another vial with the wrong drug, etc.). A manual check by a pharmacist may also be performed prior to capping to confirm the order is properly filled. In one embodiment, a pharmacist performs a visual inspection of the contents of the vial and compares the visual contents to an image of what the drug in the vial is supposed to be. The image available to the pharmacist is from a computer database and is provided on a computer screen at the pharmacist's station as the holder passes over a station that identifies the holder (and thus the associated vial and drug). If there are no problems with the filled vial, the pharmacist then hits an appropriate key or keys on his computer terminal and the holder and vial are allowed to proceed to capping. If there are any problems, the pharmacist may manually remove the holder and vial from the line, or, alternatively, the pharmacist may be required to hit a key or keys on his computer terminal indicating the problem with the filled vial and the filled vial may proceed on another line to a mistake area where errors are collected. In another embodiment, rather than making a visual inspection of the contents of the filled vial, the pharmacist compares an image of the contents of the filled vial previously taken during processing with an image from a computer database of what the drug in the vial is, dispenses should be.

[0072]  After being filled, and optionally verified and checked by a human operator, each filled vial is ready to be capped. In a preferred embodiment, the pucks containing vials are sent to the capper. The capper may optionally contain an alternating cap chuck and indexing stepper drive that allows the introduction of pucks containing vials to the cap head. After capping, any capped vials proceed to an accumulation line to feed the vials into totes. After filling, the vials are removed from the holders/pucks and the holders/pucks are circulated by a conveyor line or lines back to the labeling area of the prescription filling system for reuse.

[0073]  The filled vials of a patient's prescription order may be packed manually or by an automatic packing machine. Alternatively, a patient's prescription order may be combined with additional pre-packaged goods/items by an automatic picking machine (such as the A-frame machine available from Knapp Logistics & Automation that is well known to those skilled in the art) or manual picking before proceeding to packing. Other machines are contemplated such as an LMS machine or and MDS machine, which are well known to those of skill in the art. Packaging of a patient's order for shipment may be done manually or by an automated packing system based on any number of parameters set by the administrator of the prescription filling system.

[0074]  In an exemplary embodiment according to this invention, an automated packing system provides integrated processing of orders for packaging. As a tote or multiple totes enter the automatic packing machine from a conveyor line, the packer reads the RFID chip in the tote that identifies the order or a part of an order. The tote or multiple totes identity is/are verified and the packer prints an order document that details the prescriptions and other goods/items, if any, ordered for inclusion in the packed shipment. For example, if one location has a multitude of orders that must be sent to that location, one can program the PLC and/or the WCS to pack those orders together. The order document is scanned after

printing and the RFID chips of the tote or multiple totes is/are read again to confirm a match. A shipping label is printed and similarly verified to match the tote and order document. The order is then packed for shipment as the tote contents are emptied into a packing area, and the shipping label is applied to the package. Packages may then move to a pre-sorting area where they are pre-sorted for shipment, if desired.

[0075]  The present invention also provides systems and methods for automated packaging with increased efficiency and reduced errors. Certain embodiments of systems and methods of the invention may provide one or more of the following functionalities: packaging of orders from multiple conveyor systems; handling of numerous order types, including prepackaged goods/items and vials filled to customer order; insertion of custom literature into final package; volumetric sensing that enables dynamic sizing of the final package; creation of custom internal bag/carton labels for final package; creation and application of custom external shipping labels onto final package; bar code and RF identification to validate final package contents; error correction station; and a final package sorter to enhance shipping efficiency.

[0076]  A customer's order is typically entered into a central computer system that controls order flow and processing. A typical subsystem of totes and conveyors collects all prepackaged goods/items from an automated storage warehouse. Individual customer orders are collected in a single tote. In a preferred embodiment, another subsystem places labels on each vial before filling the vials, dispenses medication in the vials and then caps the vials. The goods/items in the totes and vials are then transported to an automated packaging system by a system of conveyors where the contents of the totes are combined with the vials and packaged for shipping as further described below.

[0077]  Referring now to FIG. 26, each individual customer order of prepackaged goods/items is placed, either manually or by a tote filling subsystem 1, into a radio frequency (RF) identified tote bin. A tote conveyor 2 transports the tote from the filling process to a volume sensor 3 that determines the final package volume required.

[0078]  Tote conveyor 2 then transports the tote bin to a tote flipper 4. Tote flipper 4 is preferably Knapp Model BHEL, available from Knapp Logistics & Automation of Cartersville, Ga., U.S.A., but other commercially available tote flippers well known to those skilled in the art are suitable as well. Tote flipper 4 empties the contents of the tote bin into a divided section of bucket conveyor 6, and returns the empty tote bin 5 to be reused in the tote filling subsystem. Each divided section of bucket conveyor 6 is RF identified and represents an individual customer order or a portion of an order. An embodiment of an automated packaging system may include multiple tote filling subsystems, tote conveyor lines, volume sensors, and tote flippers for each bucket conveyor 6.

[0079]  Pre-filled vials of medication are transported by a vial conveyor 8 to a vial loader 9 from a manual or automated vial filling subsystem 7. Vial loader 9 places the appropriate vial into the appropriate divided section of bucket conveyor 6 that corresponds to an individual customer order or a portion of an order. Modifications are considered to be within the scope of the invention such as modifying the system to package orders containing goods/items and/or vials from several different customers together that are subsequently sent to the same location. An optional volume sensor 10 determines the final order package volume required, including any vials from

vial loader **9**. Volume sensor **10** operates in substantially the same manner as volume sensor **3** described above. The volume of the vials after filling is often a known value and, in certain embodiments of systems and methods of this invention, may simply be added to the volume value obtained by volume sensor **3** to calculate a final order package volume. An embodiment of an automated packaging system may include multiple vial filling subsystems, vial conveyor lines, and vial loaders for each bucket conveyor **6**.

[0080]   A printer station **11** prints and folds custom literature (e.g., instructions, packing lists, advertisements, etc.), sometimes referred to as lit-packs, and internal bag/carton labels and places them into the appropriate divided section of the bucket conveyor **6** that corresponds to an individual customer order. An embodiment of an automated packaging system may include multiple printer stations. Printer station **11** is preferably a P.S.I. "Autoslip" Model, available from PSI Peripheral Solutions Inc., Amherst, N.Y., U.S.A. or Mississauga, Ontario, Canada.

[0081]   A bucket unloader **12** completely empties one or more of the divided sections of bucket conveyor **6** into a dynamic bagging/cartoning unit **13**. It is contemplated that not only may one have either a dynamic bagging unit or a dynamic cartoning unit but in a preferred embodiment, the system may contain both a dynamic bagging unit and a dynamic cartoning unit. Having both a dynamic bagging unit and a dynamic cartoning unit allows an order to be either bagged or cartoned or allows a mix of the two. In a preferred embodiment the cartoning is made of corrugated cardboard. Bucket unloader **12** empties the divided sections of bucket conveyor **6** only after matching the RF identification of the sections to the bar code on the internal bag/carton label. If a mismatch occurs, the contents of the divided section are transported by bucket conveyor **6** to an error correction station **17** for manual processing.

[0082]   Upon receiving the contents from the bucket unloader, dynamic bagging/cartoning unit **13** sizes the bag/carton required according to the volume of the order, as detected by volume sensors **3** and/or **10** or a calculation such as that described above, seals the bag/carton, and places an external shipping label on the final package. Dynamic bagging/cartoning unit **13** can be obtained from Belk of Germany., but other bagging/cartoning units well known to those skilled in the art may be used. The final package is transported by a bag/carton conveyor **14** to a bag/carton sorter **15** that pre-sorts the completed orders for shipping **16** to the customer. An embodiment of an automated packaging system may include multiple bucket unloaders, dynamic bagging/cartoning units, bag/carton conveyor lines, and bag/carton sorters for each bucket conveyor **6**.

[0083]   The system for automatic packaging of goods/items, as described previously has the following advantages:

[0084]   a) an ability to size a bag or a carton according to the volume of goods/items,

[0085]   b) an ability to consolidate the goods/items into either of bags or cartons or a mix of bags and cartons,

[0086]   c) an ability to add bags or cartons to an order,

[0087]   d) an ability to hold, sequence and sort orders.
To Applicants knowledge, all of these traits are heretofore unknown.

[0088]   An additional advantage that the automated packaging system of the invention has over other packaging systems is that the instant automated packaging system allows either distribution order oriented packaging or end of the line packaging or both. This is in contrast to presently available packaging systems that use only end of the line packaging systems. Moreover, the automated packaging system of the instant invention allows for multi-line and single line order packaging, including an ability to combine different packaging materials, such as bags and cartons.

[0089]   The foregoing description of the exemplary embodiments of the invention has been presented only for the purposes of illustration and description and is not intended to be exhaustive or to limit the invention to the precise forms disclosed. Many modifications and variations are possible in light of the above teaching. The embodiments were chosen and described in order to explain the principles of the invention and their practical application so as to enable others skilled in the art to utilize the invention and various embodiments and with various modifications as are suited to the particular use contemplated. Alternative embodiments will become apparent to those skilled in the art to which the present invention pertains without departing from its spirit and scope. Moreover, it is contemplated and within the scope of the instant invention to combine any embodiment of the above-described invention with any other embodiment.

 **1-15**. (canceled)

 **16**. A method of automated tablet dispensing comprising:
holding tablets in a canister that is removably engaged with a counter;
transferring tablets from the canister into a hopper assembly of the counter and moving the tablets past or through a sensor;
counting the tablets with the sensor;
receiving the counted tablets in a first compartment of a buffer with multiple compartments before releasing the counted tablets into a vial; and
emptying the tablets from the first compartment of the buffer into a vial.

 **17**. The method according to claim **16**, further comprising balancing a dispenser reserve and a vibratory drive of the hopper assembly so that tablets flow evenly down a singulation channel.

 **18**. The method according to claim **16**, further comprising emptying other counted tablets from the second compartment of the buffer and into a vial before emptying the tablets from the first compartment of the buffer.

 **19**. The method according to claim **18**, wherein at least one compartment of the buffer contains tablets that have been counted and are ready to be emptied into a vial while the other compartment is being filled with tablets.

 **20-24**. (canceled)

*   *   *   *   *

EXHIBIT C

U.S. Patent No. 8,601,776
SYSTEMS AND METHODS OF AUTOMATED TABLET DISPENSING,
PRESCRIPTION FILLING, AND PACKAGING
Knapp Logistics Automation, Inc.
Sutherland Ref. No.:  24036-0010

**PATENTED CLAIMS**

1.      A system for automated tablet dispensing comprising:

a counter configured to count tablets, the counter comprising:

a secure door;

a sensor configured to count the tablets; and

a hopper assembly configured to receive the tablets through the secure door and transfer the tablets to the sensor; and

a closed canister removably engaged with the secure door of the counter and configured to hold the tablets for delivery through the secure door of the counter and into the hopper assembly;

wherein the counter is configured to count the tablets when the secure door of the counter is open and closed.


2.      The system of claim 1, wherein the secure door of the counter is configured to be open when the canister is engaged with the counter.


3.      The system of claim 1, wherein the secure door of the counter is configured to be closed when the canister is removed from the counter.


4.      The system of claim 1, wherein the canister comprises a secure door that is removably engaged with the secure door of the counter.


5.      The system of claim 4, wherein the secure doors of the counter and the canister are configured to be closed when the canister is removed from the counter; and wherein the secure doors of the counter and the canister are configured to be open when the canister is engaged with the counter.

6.      The system of claim 1, further comprising an electronic verification system comprising a RF chip or an electronic serial number located on each of the counter and the canister.

7.      The system of claim 1, wherein the canister comprises a tamper-proof security tag.

8.      The system of claim 1, further comprising a locking mechanism configured to prevent unauthorized access to the tablets in the counter and the canister when the canister is engaged with the counter.

9.      The system of claim 8, wherein the locking mechanism comprises an automatic locking mechanism configured to prevent unauthorized access to the tablets in the counter and the canister once the canister is engaged with the counter.

10.     The system of claim 4, wherein the secure door of the canister comprises a reversible door configured to reversibly open and close.

11.     The system of claim 4, wherein the secure door of the canister comprises a sliding door configured to reversibly open and close.

12.     The system of claim 6, wherein the secure door of the counter is configured to be closed until the canister is engaged with the counter and verification of the counter and the canister is successfully completed via the electronic verification system.

13.     The system of claim 6, wherein the secure door of the counter is configured to be open once verification of the counter and the canister is successfully completed via the electronic verification system.

14.     The system of claim 1, wherein a capacity of the hopper assembly is equal to or greater than a capacity of the canister.

15.     The system of claim 1, wherein the canister and the hopper assembly are configured to allow the tablets to be emptied completely from the canister into the hopper assembly when the canister is engaged with the counter.

16.     The system of claim 1, wherein the counter is configured to count the tablets when the canister is removed from the counter.

17.     The system of claim 1, wherein the canister and the counter are configured to allow the canister to be removed from the counter while the counter counts the tablets.

18.     The system of claim 1, wherein the canister and the counter are configured to allow the tablets to be delivered from the canister into the hopper assembly while the counter counts the tablets.

19.     The system of claim 1, wherein the canister comprises a security identification chip for validation by a central computer system.

20.     The system of claim 1, wherein the counter further comprises a buffer assembly configured to hold pre-counted tablets.

# EXHIBIT D



Who we are          Products          Contact RXAS          Client Login

## Tablet & Capsule Dispensing Units and System

Home / Products /  Mail Order & Central Fill Pharmacy /
Fulfillment System / Tablet & Capsule Dispensing Units and System



The Script Count Tablet & Capsule Dispensing Units are engineered to maximize the accuracy, efficiency and control of tablet and capsule prescription orders dispensed in mail order and central fill pharmacies. The advanced design of the Script Count reduces the cost per prescription. The proprietary and patent pending technology of the Script Count provides users the ability to dramatically increase production throughput and ensure that prescription orders leaving their facility are accurate.

## Advanced Pill Counting Technology

Each Script Count incorporates RXAS' patent pending Advanced Pill Counting Technology. The method RXAS employs for pill counting ensures each pill is verified, providing insurance that the requested count is accurate through a technology not available from any other pill counting system.

FlexBed Pharmacy
Automation
System

Script Count-S4

Tablet & Capsule
Dispensing Units
and System

Unit of Use
Dispensing &

## Full Formulary Count Capability

All Script Counts include a proprietary process control and superior pill singulation that ensures the accurate dispensing of all shapes and sizes of tablet and capsule products. This Script Count proprietary process control also eliminates the potential for breakage, grinding, damage or degradation to the drug being dispensed.

## Vibratory and Centrifugal System Options

RXAS offers two models of the Script Count Unit. The Script Count Vibratory system provides an average dispense speed of 30-40 seconds per 100 pills; and will process any shape of tablet or capsule. The Script Count Centrifugal system provides an average dispense speed of 15-30 seconds per 100 pills; and is designed to count pills that are high running products within a formulary.

## No Spill Interface to Receiving Bottle

RXAS designed the Script Count systems with a proprietary interlocking interface between the bottle being filled and the Script Count pill dispenser. This interface captures the inside and outside neck of the bottle, creating a seal-effect prior to, during and momentarily after dispensing the targeted count.

## 4500cc Main Hopper Pill Capacity (4.5 liters)

With one of the largest Main Hopper Capacities of any pill counting system available in the industry, The Script Count was designed with minimizing the replenishment labor required to maintain constant throughput in mind. The main hopper holds a capacity of up to 4.5 liters of product. The transparent panels of the Main Hopper are UV protected Lexan material which isolates your inventory from light degradation.

## 4500cc Dock able Replenishment Hopper (4.5 liters)

The Script Count Dock-able Replenishment Hopper expands the production staging and inventory management capacity of the Script Count providing for the lowest replenishment frequency of any pill dispensing system in the industry with an astounding 9000cc (9 Liter) total capacity. The transparent panels of the Replenishment Hopper are UV protected Lexan material which isolates your inventory from light degradation.

Features:

- Advanced Pill Counting Technology

- Full Formulary Count Capability

Labeling System
Single Channel

Nutraceutical

Diagnostic Laboratory
Automation

Internet Retail
Packaging Automation

## What Clients Say

*We have had the opportunity to partner with RX Automated solutions over the past 18 months on a unique label application project. When over a dozen engineering companies told me what we were trying to accomplish couldn't be done, RXAS went about building a solution from the ground up. When confronted with any challenges through the process, their entire team, from administration, sales, engineering and design kept committed to the project and moved forward to supply us the solution we needed. I look forward*

Vibratory Bowl And Centrifugal Models

No Spill Interface To Receiving Bottle Dust Control With HEPA Filtration

4500cc Main Hopper Pill Capacity

9000cc Total Capacity With Optional Hopper

Localized Or Offline Replenishment Viewable Pill Stream With Front Door Access

99.95% Dispensing Accuracy

15-40 Second Dispensing Speeds For 100 Count Order

*to the partnership for*
*years to come.*



**Ted Shanley,**
President,
Emerald City
Label/eCom Label
Solution

Copyright 2013 RXAS | All Rights Reserved    Phone: 303-485-1499    Fax: 303-485-6547    105 S. Sunset Street, Suite K-L-M | Longmont, Colorado 80501

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

## DEFENDANTS

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

❑ 1  U.S. Government
       Plaintiff

❑ 3  Federal Question
       *(U.S. Government Not a Party)*

❑ 2  U.S. Government
       Defendant

❑ 4  Diversity
       *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                          *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❑ 1 | ❑ 1 | Incorporated *or* Principal Place of Business In This State | ❑ 4 | ❑ 4 |
| Citizen of Another State | ❑ 2 | ❑ 2 | Incorporated *and* Principal Place of Business In Another State | ❑ 5 | ❑ 5 |
| Citizen or Subject of a Foreign Country | ❑ 3 | ❑ 3 | Foreign Nation | ❑ 6 | ❑ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❑ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❑ 625 Drug Related Seizure of Property 21 USC 881 | ❑ 422 Appeal 28 USC 158 | ❑ 375 False Claims Act |
| ❑ 120 Marine | ❑ 310 Airplane | ❑ 365 Personal Injury - | ❑ 690 Other | ❑ 423 Withdrawal | ❑ 400 State Reapportionment |
| ❑ 130 Miller Act | ❑ 315 Airplane Product | Product Liability | | 28 USC 157 | ❑ 410 Antitrust |
| ❑ 140 Negotiable Instrument | Liability | ❑ 367 Health Care/ | | | ❑ 430 Banks and Banking |
| ❑ 150 Recovery of Overpayment | ❑ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ❑ 450 Commerce |
| & Enforcement of Judgment | Slander | Personal Injury | | ❑ 820 Copyrights | ❑ 460 Deportation |
| ❑ 151 Medicare Act | ❑ 330 Federal Employers' | Product Liability | | ❑ 830 Patent | ❑ 470 Racketeer Influenced and |
| ❑ 152 Recovery of Defaulted | Liability | ❑ 368 Asbestos Personal | | ❑ 840 Trademark | Corrupt Organizations |
| Student Loans | ❑ 340 Marine | Injury Product | | | ❑ 480 Consumer Credit |
| (Excludes Veterans) | ❑ 345 Marine Product | Liability | | **LABOR** | ❑ 490 Cable/Sat TV |
| ❑ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | ❑ 710 Fair Labor Standards | ❑ 861 HIA (1395ff) | ❑ 850 Securities/Commodities/ |
| of Veteran's Benefits | ❑ 350 Motor Vehicle | ❑ 370 Other Fraud | Act | ❑ 862 Black Lung (923) | Exchange |
| ❑ 160 Stockholders' Suits | ❑ 355 Motor Vehicle | ❑ 371 Truth in Lending | ❑ 720 Labor/Management | ❑ 863 DIWC/DIWW (405(g)) | ❑ 890 Other Statutory Actions |
| ❑ 190 Other Contract | Product Liability | ❑ 380 Other Personal | Relations | ❑ 864 SSID Title XVI | ❑ 891 Agricultural Acts |
| ❑ 195 Contract Product Liability | ❑ 360 Other Personal | Property Damage | ❑ 740 Railway Labor Act | ❑ 865 RSI (405(g)) | ❑ 893 Environmental Matters |
| ❑ 196 Franchise | Injury | ❑ 385 Property Damage | ❑ 751 Family and Medical | | ❑ 895 Freedom of Information |
| | ❑ 362 Personal Injury - | Product Liability | Leave Act | | Act |
| | Medical Malpractice | | ❑ 790 Other Labor Litigation | | ❑ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❑ 791 Employee Retirement | **FEDERAL TAX SUITS** | ❑ 899 Administrative Procedure |
| ❑ 210 Land Condemnation | ❑ 440 Other Civil Rights | **Habeas Corpus:** | Income Security Act | ❑ 870 Taxes (U.S. Plaintiff | Act/Review or Appeal of |
| ❑ 220 Foreclosure | ❑ 441 Voting | ❑ 463 Alien Detainee | | or Defendant) | Agency Decision |
| ❑ 230 Rent Lease & Ejectment | ❑ 442 Employment | ❑ 510 Motions to Vacate | | ❑ 871 IRS—Third Party | ❑ 950 Constitutionality of |
| ❑ 240 Torts to Land | ❑ 443 Housing/ | Sentence | | 26 USC 7609 | State Statutes |
| ❑ 245 Tort Product Liability | Accommodations | ❑ 530 General | | | |
| ❑ 290 All Other Real Property | ❑ 445 Amer. w/Disabilities - | ❑ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment | **Other:** | ❑ 462 Naturalization Application | | |
| | ❑ 446 Amer. w/Disabilities - | ❑ 540 Mandamus & Other | ❑ 465 Other Immigration | | |
| | Other | ❑ 550 Civil Rights | Actions | | |
| | ❑ 448 Education | ❑ 555 Prison Condition | | | |
| | | ❑ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

❑ 1  Original
       Proceeding

❑ 2  Removed from
       State Court

❑ 3  Remanded from
       Appellate Court

❑ 4  Reinstated or
       Reopened

❑ 5  Transferred from
       Another District
       *(specify)*

❑ 6  Multidistrict
       Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

❑ CHECK IF THIS IS A **CLASS ACTION**
   UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ❑ Yes   ❑ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____

DOCKET NUMBER _____

DATE

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

JS 44 Reverse  (Rev. 12/12)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)**     **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)**     **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)**     **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**     **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**     **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**     **Nature of Suit.**  Place an "X" in the appropriate box.  If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit.  If the cause fits more than one nature of suit, select the most definitive.

**V.**     **Origin.**  Place an "X" in one of the six boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.  When this box is checked, do not check (5) above.

**VI.**     **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.**     **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**     **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.