IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 14-cv-00319-RBJ

KNAPP LOGISTICS & AUTOMATION, INC.,

    Plaintiff,

v.

R/X AUTOMATION SOLUTIONS, INC.,

    Defendant.

---

Order on Pending Motions

---

The Court addresses the pending motions as follows:

### I. Defendant's Motion in Limine, ECF No. 151

**A. Daubert and Rule 702.**

Defendant's "motion in limine" is an untimely Daubert motion. On April 22, 2014 the Court issued a Scheduling Order that, among other things, adopted Knapp's detailed scheduling proposal. ECF No. 33. The Scheduling Order set July 3, 2015 as the deadline for dispositive motions and Daubert motions. *Id* at 12. Defendant's excuse that it could not have known of the bases for the motion until after it took depositions of the experts is lame. Defendant had Dr. Derby's report, for example, before the due date for Daubert motions. Everything that the "motion in limine" complains of with respect to Dr. Derby is plain to see on the face of his report.

Nevertheless, I will address the motion because two clients are approaching trial in a little over two weeks. To take the example of Dr. Derby again, it is evident from his report that plaintiff's counsel have a poor understanding of what opinions he may state at trial. For the clients' sake, I would rather have the lawyers make appropriate adjustments before trial than have their trial strategy blow up in their face.

Expert opinion testimony is admissible if it is relevant and reliable. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589, 594-95 (1993). The opinions are **relevant** if they would "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. They are **reliable** if (1) the expert is qualified "by knowledge, skill, experience, training, or education," (2) his opinions are "based upon sufficient facts or data," and (3) they are "the product of reliable principles and methods." *Ibid.*

In general the following restrictions will be applied and enforced by the Court:

First, every expert will be strictly limited to what has been disclosed in his report. The fact that an opinion might have been given in a deposition or otherwise does not change this. If it's not in the report, it will not be permitted. I expect the lawyers to carefully limit their questions to matters covered in the reports.

Second, however, the fact that an opinion is expressed in a report does not necessarily mean that it is admissible. The opinions will be limited to the expertise of the expert, whether or not they have been properly disclosed.

Third, the expert will not be expressing opinions on the law.

Finally, the expert will not express opinions contrary to rulings that the Court has made in this case.

### B.  Dr. Derby.

Turning specifically to Dr. Derby, his expertise is in the field of mechanical engineering. He appears to be well qualified to testify, for example, about how the various pill-counting machines work. He appears to be well qualified to compare the features of one machine to another. His technical knowledge of machine and engineering concepts will undoubtedly be of assistance to the jury.

However, upon my review of Dr. Darby's original report, ECF No. 152-2, I find that much of it has nothing to do with his expertise as a mechanical engineer. Rather, it is apparent that counsel put him up to signing a document that, in very large part, expresses opinions that are not within his expertise. It is apparent that counsel drafted substantial parts of the purported Derby report and hope to use Dr. Derby essentially as a puppet through which counsel will lecture the jury on the law and why Knapp should win the case. This report goes far beyond the normal and appropriate cooperation of counsel and expert.

For example, section VII of Dr. Derby's report bears the heading, "Legal Standards." ECF No. 152-2 at 8. After acknowledging that he is not a legal expert, Dr. Derby sets forth in paragraph after paragraph his "understanding" of the applicable legal standards, even citing supporting case law. He expresses his "understanding" of such things as independent and dependent claims, the doctrine of claim differentiation, what a plaintiff must prove to establish infringement, contributory infringement, induced infringement, intent to encourage infringement, literal infringement, the doctrine of equivalents, etc. None of that is within his expertise. At best he has been spoon-fed the legal concepts and theories of counsel. Giving him the benefit of the doubt, I will assume that he was told that it is normal and proper for an expert to sign off on a

report containing what amounts to a legal brief or a patent law seminar. It is neither normal nor proper.

His section VIII(A), at least to the extent he is describing the product and how works, appears to be largely technical and within his expertise. But section VIII(B) expresses his opinion of the qualifications that "one of ordinary skill in the art" would have – an opinion that is arguably permissible in a Markman hearing (and which I allowed him to express at the Markman hearing in this case) but is irrelevant to the issues the jury will face at trial. His section VIII(D) expresses his "understanding" of the Court's Claim Construction Order. The Court's Order and construction of terms speaks for itself. It is the law of the case, and it need not (and will not) be the subject of Dr. Derby's trial testimony. The same is true of section IX where Dr. Derby purports to define claim terms that the Court did not address in its Markman ruling. If there is a need for definitions of any additional terms, it will be done by the Court, not by Dr. Derby.

Starting with section X, *Id.* at 21, and continuing in subsequent sections, Dr. Derby expresses opinions that RXAS products infringe Knapp's patent. For example, he expresses the opinion that RXAS has "directly and/or contributorily and/or by inducement, literally or under the doctrine of equivalents, infringed those patents." *Id.* at 22, ¶111. As another example, he opines that RXAS has "contributed to and/or induced Humana's infringing use" of certain products. *Id.* at ¶¶204-208. He has no expertise to express such opinions, in that language or any other language.

That is not to say that nothing in section X is admissible. He can describe how features of the various products discussed in that section operate (but not speculate on what RXAS is attempting to re-argue or attempting to do and not comment on any product as to which the

4

Court has granted summary judgment). If given the Court's definition of a term, he can express an opinion as to whether an accused product does or does not operate in a manner consistent with that definition.

I need not go through his 62-page report line by line and coach counsel as to what Dr. Derby can and cannot do, nor do I need to review his supplemental report. ECF No. 152-1. Counsel surely gets the drift and, since they hope to be effective advocates at trial, they will conform their questioning of Dr. Derby to the letter and spirit of this order. Otherwise, they are in for repeated interruptions of testimony, exclusions of testimony, and admonitions from the Court.

I have focused on Dr. Derby, but the same rules apply to all experts on both sides.

### C.  Mr. Fancher.

The primary bones of contention appear to be whether Knapp can seek damages for the sale of a non-infringing product or for the attempt to sell an infringing product even though no sale occurred. The answer to the first question is "no." The answer to the second question is, "it depends."

I have not at this writing had an opportunity to review Mr. Fancher's report, but the parties need guidance now. A patentee is entitled to a royalty for unrealized offers for sale if the patentee would have negotiated for a fee from the alleged infringer to include the patented product in an offer for sale. The patentee must present evidence of what that fee would have been. I have summarized the relevant cases below. The dispute turns on whether Mr. Fancher is simply using the same royalty rate that he used for actual sales (impermissible) or whether he is

using a royalty rate/fee that would have been negotiated for prior to the offer for sale (permissible).

Thus, in *City of Aurora v. PS Sys.,* 720 F. Supp. 2d 1243 (D. Colo. 2010), cited by RXAS in its motion, the court acknowledged that a patentee could be entitled to a royalty for unrealized offers for sale. *Id.* at 1243. "[I]t is conceivable that a patentee would negotiate a fee from a general contractor to allow the general contractor to include a patented invention in a construction bid." *Id.* at 1255. The court ruled as a matter of law that the patentee was not entitled to the same damages for an offer for sale that the patentee would be entitled to had it constructed and used an infringing structure. The evidence the patentee presented, including an expert report, only calculated the royalty for the construction and use of the infringing structure, and did not calculate a reasonable royalty to include the patent in an offer for sale. Therefore, the evidence could not be used to establish a reasonable royalty for an unrealized offer for sale. *Id.*

In *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1358-59 (Fed. Cir. 2012), cited by Knapp, the court examined a jury's damages award for an unrealized offer for sale. It calculated the reasonable royalty by hypothetically determining the terms of the agreement the parties would have reached at the time the infringement began. The patentee presented evidence that it had an upfront licensing fee, so at the time the infringer offered the patented product for sale, the infringer would have paid that licensing fee. *Id.* at 1359.

At this point all I can say is that those are the rules that will govern what Mr. Fancher can say on the subject.

6

Based on the briefs I also question whether plaintiff can establish a sufficient foundation for Mr. Fancher to express opinions as to what triggers consumer demand in the pill counting industry. Knapp witnesses perhaps can establish such a foundation and express their opinions, but I doubt that it would be of assistance to the jury to have Knapp's opinions regurgitated through an independent expert witness. As for the "convoyed sales" issue, Knapp does not appear to disagree with defendant's point but indicates that Mr. Fancher does not include unpatented components in the royalty base for his royalty rate calculations. I do not fully understand what Knapp plans to do with Mr. Fancher, and as to these two subjects (consumer demand, convoyed sales), I elect to wait to address those issues if necessary in the context of the actual evidence presented at trial.

## II. **Plaintiff's Motion to Exclude Counterclaims, ECF No. 155.**

In addition to answering Knapp's claims, RXAS asserted counterclaims for (1) a declaration of non-infringement and invalidity of the '776 patent; (3) (count two was previously dismissed), an antitrust violation based upon assertion of a patent procured by fraud, (4) sham litigation, and (5) intentional interference with prospective business. RXAS' Second Amended Answer with Amended Counterclaims, ECF No. 100-2 at 18-28. In its prayer for relief RXAS requests, in addition to equitable relief, an award of "damages in an amount to be determined" and "punitive and treble damages in an amount to be determined." *Id.* at 28. Knapp now asks the Court to exclude the antitrust and sham litigation counterclaims under Fed. R. Civ. P. 26(a)(1)(A)(iii) and 37(c).

Rule 26(a)(1)(A)(iii), concerning "Initial Disclosures," requires that a party must provide to the opposing party

a computation of each category of damages claimed by the disclosing party – who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered

Rule 37(c) provides among other things that if a party fails to provide the information required by Rule 26(a), the party may not use the information at trial unless the failure was either substantially justified or harmless.

Knapp suggests that RXAS has not provided a computation of its claimed damages (or evidence of market power that would support antitrust and sham litigation claims), and therefore, those counterclaims should be excluded. I will focus on the damages computation since that is what Rule 26(a)(1)(iii) addresses. I do not know whether RXAS has supplied damages calculations. Frankly, I do not know whether RXAS even intends to press its counterclaims for damages at trial. At this point I note only that the rules say what they say, and they will be enforced. If RXAS has not supplied computations of the compensatory damages it is seeking, and we are now essentially on the eve of trial, those claims will not be allowed.

DATED this 24th day of September, 2015.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge